(C. D. 1131)

H. J. BAKER & BRO. v. UNITED STATES

· United States Customs Court, Third Division

(Decided September 30, 1948)

*Eugene R. Pickrell* for the plaintiff.

*Charles J. Miville*, Acting Head, Customs Division, Assistant Attorney General's Office (*Harold L. Grossman, Daniel I. Auster*, and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: These are protests arising at the port of New York against the collector's assessment of duty on merchandise, invoiced as sunflower seed meal, imported from Uruguay on November 30 and December 12, 1944, at the rate of three-tenths of 1 cent per pound under paragraph 730 of the Tariff Act of 1930 as vegetable oil-cake meal, not specially provided for. The protests claim that the merchandise is free of duty under paragraph 1685 as a substance used chiefly for fertilizer, or chiefly as an ingredient in the manufacture of fertilizer, or that it is dutiable at 5 per centum ad valorem under paragraph 730, as amended by the trade agreement with Mexico, T. D. 50797, as mixed feed. The latter claim was abandoned by plaintiff at the trial.

The pertinent provisions of the tariff act are as follows:

PAR. 730. * * * all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound; * * *.

PAR. 1685. Guano, basic slag (ground or unground), manures, and (notwithstanding any other provision of this Act) those grades of all other substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers. [Free.]

At the trial plaintiff called Herman Arrow, analytical chemist in the United States Customs Laboratory at the port of New York, who testified that he had examined samples of the merchandise herein; that the sample covered by entry No. 315519 (protest No. 121149–K) had a moisture content of 5.7 per centum, an ash content of 6.2 per centum, a protein content of 42 per centum, a fiber content of 14.6 per centum, and a fat content of 5.2 per centum; that he had found 6.7 per centum of nitrogen present and from that he had calculated the protein content to be 42 per centum; that the sample covered by entry No. 316787 (protest No. 121150–K) contained 5.9 per centum nitrogen, equivalent to a protein content of 36.9 per centum, a moisture

content of 5.8 per centum, an ash content of 5.2 per centum, a fiber content of 16.6 per centum, and a fat content of 8.8 per centum; that he found no evidence of any admixture of grains or grain products; that he found no volatile solvents present; that in his opinion the merchandise was a pressed cake, the residue remaining after the physical extraction of oil; that he found no evidence of the presence of any organic solvent, such as petroleum, naphtha, or benzol.

Felix G. Sherry, testified that he is employed as a trader by H. J. Baker & Bro., the plaintiff herein; that he has devoted practically all of his business lifetime to the fertilizer and feed business; that he had bought and sold sunflower seed meal actively since 1940 both for fertilizer and for feed purposes; that sunflower seed meal is the residue after the extraction or expression of oil from the seed; that there is only one grade of sunflower seed meal; that sunflower seed meal is not a standard oilseed meal in this country; that he purchased the merchandise covered by protest 121149–K from a producer in Uruguay; that it arrived in this country on November 30, 1944; that he had previously sold this importation to a feed manufacturer in Buffalo on June 8, 1944; that the sale was cancelled in August 1944 because of the delay in shipment from Uruguay; that the merchandise covered by the shipment was eventually sold to Wilson & Toomer Fertilizer Co. in Jacksonville, Fla., on December 11, 1944; that the purchasers were fertilizer manufacturers but he did not know how they used this merchandise. The witness stated that he had purchased the merchandise covered by protest 121150–K from the same producer in Uruguay on May 15, 1944; that it was imported on December 12, 1944; that a part of this shipment had been included in the sale to the feed manufacturer in Buffalo in June 1944, which sale had been cancelled; that the merchandise was eventually sold as follows: To Roy V. Mundis, York, Pa., on October 31, 1944; to H. K. Webster Co., Lawrence, Mass., on January 12, 19, and 30, 1945; and to Delaware Mills, Deposit, N. Y., on January 23 and 31, 1945.

The witness also testified that there was no market for sunflower seed meal during November and December 1944; that there was a decided lull in the feed market generally from October right through December of that year; that he made an investigation to ascertain whether or not sunflower seed meal was produced in the United States and sold domestically during 1944 and 1945; that he got in touch with some of the principal crushers of oil seeds and with brokers and dealers in various oil meals, contacting 9 or 10 different concerns and also the Department of Agriculture; that he could get no information whatever about the product and could not find where it was produced here nor anyone who had had any experience in handling it. He also made an investigation as to the sales of imported sunflower seed meal in the United States and found that there were one or two

other importations at about the same time as his; that the only concerns that had the material were a company in Houston, Tex., another company in New York, and his own firm. He stated that as a result of his investigations as to imported sunflower seed meal he found that the chief use was for fertilizer.

At a subsequent hearing plaintiff called J. Raymond Myers, manager of the Cambridge, Mass., plant of Eastern States Farmers Exchange, who testified that his firm handles feed, seed, fertilizers, and general farm supplies, and that it owns and operates fertilizer plants; that as manager of the fertilizer plant in North Cambridge he had bought sunflower seed meal on November 30, 1944, and January 26, 1945, from the Maurice Pincoffs Co., Houston, Tex.; that he received the first order on December 5 to 8, 1944, and the second near the middle of February 1945; that the two lots were used with other ingredients to make mixed fertilizer during March, April, and May 1945; that these were the only lots of sunflower seed meal that it had ever used in making mixed fertilizers; that it had never used any other lots for any other purposes; that sunflower seed meal could be used for feed for livestock or poultry; that he did not know the chief use of sunflower seed meal at the time of his purchase or at the time of its actual importation.

Mr. Edwin Simpson, purchasing agent of Consolidated Rendering Co., testified that his concern manufactured mixed fertilizers; that he purchased one lot of sunflower seed meal on December 1, 1944, from Bosworth Commission Co., acting as brokers for Maurice Pincoffs Co. at Houston, Tex.; that the merchandise was received on or about December 29; that he did not know of his own knowledge the chief use of sunflower seed meal.

Mr. Charles O. Duke, manager of the New Haven plant of Consolidated Rendering Co., testified that the plant operated a rendering department and also manufactured mixed fertilizers; that he had been engaged in the business of making mixed fertilizers for the past 35 years; that he saw the lot of sunflower seed meal referred to by the last witness; that it was used as a nitrogen carrier for a mixed fertilizer; that the fertilizer containing the sunflower seed meal was sold to various fertilizer dealers as a "Specialty Fertilizer" made for lawns, shrubs, golf courses, and so forth. On cross-examination the witness stated that sunflower seed meal was a vegetable oil-cake meal; that he did not know the chief use of it; that this was the first time he had had anything to do with this particular merchandise; that he understood it could be used for feed for poultry or cattle; that he purchased no other lots of sunflower seed meal; that this lot was bought during the war to replace cottonseed meal and soya-bean meal then under allocation by the War Production Board; that it was used at the end of January and the beginning of February 1945.

Defendant offered in evidence reports of four different customs agents who investigated the use to which the merchandise herein was put (defendant's exhibits 14–17, inclusive).

James R. Offutt, Assistant Supervising Customs Agent, reported that he had interviewed W. B. Hicks, vice president in charge of manufacturing of Wilson & Toomer Fertilizer Co., Jacksonville, Fla.; that Mr. Hicks stated that the sunflower seed meal which his company had purchased from H. J. Baker & Bro. was the only sunflower seed meal ever used by his company; that the shipment was received between December 29, 1944, and January 8, 1945; that it was used in a fertilizer mix during the period from January 11 to March 29, 1945. (Defendant's exhibit 14.)

Customs Agent H. E. Moore reported that he had interviewed Roy V. Mundis of York, Pa.; that Mr. Mundis stated that he had purchased 30 tons of sunflower seed meal from H. J. Baker & Bro. on October 31, 1944; that he had purchased the material for mixing with other proteins to produce poultry and dairy feed which he sold locally to farmers; that the sunflower seed meal was too coarse to mix properly with other protein ingredients; that he had to remill it before mixing with the other ingredients of his poultry and dairy feed formulas. (Defendant's collective exhibit 15.)

Customs Agent J. J. Kahler reported that he had visited the main office of H. K. Webster Co., Lawrence, Mass., and had interviewed Walter N. Webster, clerk of the corporation, who advised him that the shipments of sunflower seed meal received from H. J. Baker & Bro., as contracted for on January 12, 19, and 30, 1945, were used solely for feed purposes, being mixed with other ground grain and feed byproducts of domestic meals; that the mixture was sold to different dealers throughout New England who sell it to the retail trade for poultry and dairy feed purposes. (Defendant's collective exhibit 16.)

Customs Agent C. J. Fraser reported that he interviewed Walter V. Buck, vice president of Delaware Mills, Inc., Deposit, N. Y., and that Mr. Buck executed a sworn statement, dated January 9, 1948, stating that the sunflower seed meal purchased on January 23 and 31, 1945, from H. J. Baker & Bro. was used in the plant of the corporation in the manufacture of poultry and livestock feeds and that none of it was sold as fertilizer or used as an ingredient in the manufacture of fertilizer. This affidavit is attached to and made part of defendant's collective exhibit 17.

The issue in the instant case is whether the importations of sunflower seed meal involved herein are properly dutiable as "substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers."

It has been held that where classification of designated merchandise under a particular paragraph is expressly declared to be dependent

upon chief use, such use is to be determined as of the date of importation or immediately prior thereto. *Wilbur-Ellis Co.* v. *United States,* 18 C. C. P. A. 472, T. D. 44762; *W. J. Lake & Co., Inc.* v. *United States,* 27 C. C. P. A. 247, C. A. D. 94. In the case first cited the court said (pp. 479–480):

We are of the opinion that Congress, in providing free entry for "manures, and all other substances used chiefly for fertilizer, not specially provided for," intended to draw into this classification substances of a class used chiefly for fertilizer, not specially provided for, when such substances were, at the time of importation or immediately prior thereto, so chiefly used, regardless of whether such use obtained at the time of the passage of the act or arose thereafter, and intended to exclude from such classification such substances when they ceased to be so chiefly used, even though they may have been so used at the time of the passage of the act.

It is also the rule that the actual use of the merchandise in controversy does not determine the classification. *Pacific Guano & Fertilizer Co.* v. *United States,* 15 Ct. Cust. Appls. 218, T. D. 42240; *Bangor & Aroostook Railroad Co.* v. *United States,* 20 C. C. P. A. 96, T. D. 45724.

Moreover, the class of merchandise in issue must be in actual use at or prior to the date of importation. The dates of sale and delivery are immaterial since it is obvious that the merchandise might be purchased for a particular purpose but later found to be unsuitable and used in another way. See *Magone* v. *Heller,* 150 U. S. 70, where the court said (p. 74):

The qualifying words are not "expressly intended for use as manure," or "expressly imported for use as manure," or "in fact to be used as manure," and cannot therefore be tested by the intention of the importer, or by the use to which the goods are afterwards actually put. But the words are "expressly used for manure," and the question whether the imported articles come within the description is to be determined at the time of importation.

In the instant case Felix G. Sherry testified as follows:

Q. And as a result of that investigation as to imported sunflower seed meal, on and immediately prior to the dates of your importations, what did you find it chiefly sold for, used for?

\* \* \* \* \* \* \*

A. The chief use, from my investigations at that particular time, was for fertilizer.

However, this statement is not entitled to much weight, since Mr. Sherry testified that he could find no one who produced sunflower seed meal domestically or who had had any experience in handling it, and that the only importations of which he had knowledge were made by the importer herein, a firm in Houston, Tex., and another one in New York. The actual uses of the importations by two of these concerns, the importer and the Houston firm, are set out in the record.

It appears therefrom that Eastern States Farmers Exchange and Consolidated Rendering Co. purchased sunflower seed meal from the Houston firm; that the purchases by Eastern States Farmers Exchange were made on November 30, 1944, and January 26, 1945; that the merchandise was used in the manufacture of fertilizer, but not until March, April, and May 1945; that the purchase by Consolidated Rendering Co. was made on December 1, 1944; that it was also used in the manufacture of fertilizer, but not until the end of January and the beginning of February 1945. Since the merchandise herein was imported on November 30 and December 12, 1944, actual use of sunflower seed meal from the end of January to May 1945 does not constitute evidence of the use of such merchandise on or prior to the dates of importation.

Plaintiff's November 30 importation was sold to Wilson & Toomer Fertilizer Co. on December 11, 1944, and was used in a fertilizer mix during a period from January 11 to March 29, 1945. Its disposition is not evidence of use on or prior to either of the dates of importation herein, November 30 and December 12, 1944.

As stated above, the actual use of the merchandise in controversy does not determine the issue, but it is to be noted that all of plaintiff's second importation was used as feed.

On the record herein, we find that the weight of the evidence is not sufficient to sustain plaintiff's burden of proving that the sunflower seed meal imported in these cases was chiefly used as an ingredient in the manufacture of fertilizer at or prior to the date of importation. The protests are therefore overruled. Judgment will be rendered accordingly.