(C.D. 4121)

Converse Rubber Company *v.* United States

United States Customs Court, Second Division

(Decided November 9, 1970)

*Lamb & Lerch* (*David A. Golden* and *Richard J. Kaplan* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: In this action, plaintiff contests the classification of an importation of a machine manufactured in Germany known as the Desma 903/10 as "machines used for molding or otherwise forming rubber or plastics articles * * *" under item 678.35 of the Tariff Schedules of the United States with the consequent assessment of duty at the rate of 11.5 per centum ad valorem.

Plaintiff claims the involved merchandise to be properly subject to classification as "shoe machinery," under item 678.10 of the Tariff Schedules of the United States and that as such is entitled to free entry.

The pertinent statutory provisions read as follows:

Tariff Schedules of the United States, schedule 6, part 4, subpart H:

| | | |
|---|---|---|
| 678.10 | Shoe machinery and parts thereof_____ | Free |
| 678.35 | Machines used for molding or otherwise forming rubber or plastics articles, and parts thereof_____ | 11.5% ad val. |

During the trial plaintiff called seven witnesses to testify and introduced 14 exhibits. Defendant introduced three exhibits.

Mr. Richard E. Gladstone was the engineering manager for the plaintiff at the time of the installation of the machine in question. He described how the machine works, *infra*, and particularly noted that the machine cannot produce any product without a mold. A mold was not included when this machine was imported. Mr. Gladstone further testified that in the year of importation, he knew of no single machine in the United States which was capable of producing a whole shoe. Converse Rubber Company, in operating the machine, uses a mold that creates a rubber sole. The soles are used exclusively in the making of their basketball shoe.

Mr. Robert E. Dukeshire was employed by the Goodyear Tire & Rubber Company as an assistant development manager of its shoe products division at the time of importation. As such, he was familiar with the Desma 903/10 and 905/10, as both are similar machines, even though his company had only a 905/10 model. Mr. Dukeshire testified that the machines are capable of producing articles other than rubber soles by the use of molds other than a shoe sole mold, but cannot produce a shoe sole or anything without a mold attached.

Mr. Arthur Robert Kelly, a veteran of the shoe business for thirty years was the sales manager of plaintiff's private label division. He testified that his customers and himself all refer to the basketball shoe involved in this action as a shoe.

Mr. H. Leimroth was employed for over 16 years by Campo Industries. Campo Industries was the sole agent in the United States for the importation and sales of the Desma machines. Part of Mr. Leimroth's job was to know of each transaction involving a Desma 900 series machine and to be familiar with the machine. He testified that the machine, with the correct molds, could produce such diverse articles as gears, seals, floor mats, covers, bumpers, gaskets, diaphragms and shoe soles, but at the time of importation, only four machines were in use in this country and all were involved in the manufacture of shoes. He further testified that advertising literature for this machine proclaimed its versatility. He also said that the molds needed for producing shoe soles are not an integral part of the machine.

The manager of plant engineering at the Naugatuck footwear plant of Uniroyal, Inc., Mr. E. H. Drab, also was familiar with the Desma machine in question. He added support to the other testimony concerning the need for a mold for the machine to produce any goods, and the lack of any one machine being able to completely produce a shoe.

Mr. Paul Ernest Metzger, plant manager of the Belcamp, Maryland, plant of the Bata Shoe Company testified that there is no one machine which can produce an entire shoe. He also testified that the Desma 905/10 machine in use in the Belcamp plant produces soles exclusively for use in the production of shoes.

Mr. Charles Smith, sales manager for special products in the sole and heel division of the American Bilt-Rite Company, testified that the two Desma 905/10 machines used by his firm are used exclusively for the production of soles used in the manufacturing of shoes.

Defendant's exhibits consisted of brochures prepared by Desma and distributed by Campo. The representations contained therein were conceded to be true and accurate. The major representation in the brochures was that when an appropriate mold is used, the Desma 900 series machines can manufacture or produce on said "general purpose rubber molding machines" 20 specific and varied articles.

The Desma 903 and 905 machines operate exactly the same way. A continuous strip of compounded rubber is fed into an injector unit in which it becomes plasticized. The injector unit moves forward so as to come into contact with the mold held in place by one hydraulic clamping unit at the first station. The plasticized rubber is injected under pressure into the mold opening. The injector unit retracts to

its original position. A rotary table rotates all the clamping units one space counterclockwise so that the first station is occupied by a new, unfilled mold. The filled mold, remaining closed is now at the second station. This cycle is repeated at intervals of 18–20 seconds. Up until the seventh station the mold remains closed. At the eighth stage, the product is removed, the ninth the mold is cleaned, and the tenth the mold is closed. The next stage is the first stage and once again the process is started anew.

Based upon the record as made, plaintiff contends that it has established that the involved machine was chiefly used and in fact exclusively used in the manufacture of soles for sneakers. Plaintiff in fact, in a valiant effort, established that all of the machines of the exporter, Desma, in the 900 series were used chiefly, if not exclusively, in the manufacture of soles for sneakers.

The provisions claimed, item 678.10, *supra*, covering shoe machinery, is a use provision, *C. H. Powell Company* v. *United States*, 63 Cust. Ct. 302, C.D. 3912 (1969), as were the predecessor provisions in the Tariff Acts of 1913, 1922 and 1930. *United States* v. *Hudson Shipping Co., Inc., Barre Footwear Co.*, 49 CCPA 92, C.A.D. 802 (1962). *E. Dillingham, Inc.* v. *United States*, 54 CCPA 121, C.A.D. 922 (1967). Tariff classification controlled by use is subject to General Interpretative Rule 10(e)(i) which provides as follows:

> (e) in the absence of special language or context which otherwise requires—
>
>> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

Under the above rule of interpretation, it is incumbent upon the court to determine whether plaintiff has established the chief use of articles of the same class or kind involved at or immediately prior to the date of importation.

It is evident that the imported machine is an injection molding machine which was used solely for producing soles for sneakers when the proper mold was attached. In addition, it is also apparent that with other molds, a variety of articles may be produced and without a mold, the machine could produce nothing.

It is a basic principle of law, in this field of jurisprudence, that merchandise is dutiable in its condition as imported. *Worthington* v. *Robbins*, 139 U.S. 337 (1891). The involved machine in such condition was finished but did not contain a mold. Accordingly, we have at the time of importation an incomplete machine since it could produce

nothing without a mold. Even if, in its condition as imported, it contained a mold for the making of soles, we would still have a general purpose molding machine. There is nothing about the machine which in any way commits its use to shoe manufacture. In fact, it was admitted that the articles depicted on the last two pages of defendant's exhibit A are the types of articles the manufacturer represents the 900 series machines can make and so advertises. This affirms the general purpose nature of the imported machine. The mere fact that the importer intended to use said machine to make soles and that all of the 900 series Desma machines imported to the date of trial were so used, is not sufficient to establish the subject merchandise to be shoe machinery or parts thereof. *H. J. Baker & Bro.* v. *United States*, 21 Cust. Ct. 76, C.D. 1131 (1948), aff'd *Same* v. *Same*, 37 CCPA 52, C.A.D. 419 (1949).

In spite of the convincing evidence of the intended and actual use, the court must determine the chief use of the class or kind of article imported as prescribed by General Interpretative Rule 10(e)(i). We are of the opinion that the class or kind of article involved herein is a general purpose injection molding machine for the reasons set forth, *supra.*

Based upon the foregoing, we are of the opinion that the protest should be overruled.

Judgment will be entered accordingly.